**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NEDRA DYSON, *et al.* | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 4:17CV2584 SNLJ |
| | ) | |
| BAYER CORPORATION, *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants, | ) | |

**MEMORANDUM AND ORDER**

A group of 95 plaintiffs filed this products liability lawsuit against defendants Bayer Corporation, Bayer HealthCare LLC, Bayer Essure Inc., and Bayer HealthCare Pharmaceuticals Inc. (collectively, "Bayer") alleging that Bayer's Essure product caused them harm. Plaintiffs filed their lawsuit in the City of St. Louis, Missouri on August 31, 2017. Defendants removed the matter to this Court on October 16, 2017. Defendants filed a motion to dismiss and a motion to sever on October 23. Shortly thereafter, plaintiffs filed a motion to remand and a motion to stay ruling and briefing on the defendants' motions until after subject matter jurisdiction is addressed. The motion for remand (#18) and motion to stay (#22) have been thoroughly briefed, but plaintiff has not filed responses to the motion to dismiss. Plaintiff has also filed a motion for leave to conduct jurisdictional discovery (#24), which is fully briefed.

## I. Background

Plaintiffs claim they were injured by a permanent birth control device that is manufactured and distributed by the Bayer defendants. The device --- Essure --- was approved by the Food and Drug Administration ("FDA") in 2002. The plaintiffs bring fourteen counts including negligence, strict liability, manufacturing defect, fraud, breach of warranties, violation of consumer protection laws, Missouri products liability, violation of the Missouri Merchandising Practices Act, and punitive damages. Of the 95 plaintiffs, only three allege they are citizens of Missouri or had their implant procedure completed in Missouri. Defendants --- which are not Missouri citizens --- removed the case in part[1] on the basis of diversity jurisdiction. The presence of at least some of the 92 non-Missouri plaintiffs defeats this Court's diversity jurisdiction. But defendants, relying on the recent United States Supreme Court opinion *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773 (2017) (hereinafter, "*BMS"*), argue that this Court lacks personal jurisdiction over the claims of the 92 non-Missouri plaintiffs, and that those claims should thus be dismissed. Because there would be complete diversity between the three remaining Missouri plaintiffs and defendants, and because the amount in controversy exceeds $75,000, defendants contend this Court has jurisdiction over the remaining claims.

---

[1] Defendants also contend that this Court possesses (1) federal question jurisdiction due to plaintiffs' claims relationship to the federal regulatory process for the approval of the Essure product and procedure and (2) diversity jurisdiction pursuant to the Class Action Fairness Act ("CAFA") when the Court considers the four other nearly-identical complaints filed by plaintiffs' counsel on behalf of well over 100 plaintiffs. *See Hinton v. Bayer Corp.*, No. 4:16-cv-01679 (E.D. Mo.), *Johnson v. Bayer Corp.*, No. 4:17-cv-01533 (E.D. Mo.),*McClain, v. Bayer Corp.*, 4:17-cv-01534, and *Schaffer v. Bayer Corp.*, No. 4:17-cv-01973 (E.D. Mo.).

Plaintiffs argue that this Court should not look to personal jurisdiction. Instead, plaintiffs say this Court should recognize it does not have subject matter jurisdiction over this matter and remand the case to St. Louis County. Subject matter jurisdiction, plaintiffs argue, provides a more straightforward analysis. Personal jurisdiction, on the other hand, poses questions that plaintiffs say entitle them to discovery. Plaintiffs contend that the Bayer defendants conducted marketing and clinical trials in St. Louis, Missouri, and that the marketing and clinical trials provide the facts necessary to make a *prima facie* case of personal jurisdiction.

Plaintiffs have not responded to the motion to dismiss or motion to sever because they seek a stay of the consideration of personal jurisdiction in favor of resolving the subject matter jurisdiction questions at hand.

## II. Discussion

Central to all pending motions are matters regarding this Court's jurisdiction. Thus, jurisdiction and related motions will be discussed first below.

### A. Jurisdiction

"Jurisdiction to resolve cases on the merits requires both authority over the category of claim in suit (subject-matter jurisdiction) and authority over the parties (personal jurisdiction), so that the court's decision will bind them." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 577 (1999). Here, plaintiffs contend that this Court lacks subject matter jurisdiction over their claims and thus this Court should remand the matter to state court. Defendants argue that the Court has subject matter jurisdiction but not personal jurisdiction over certain claims and that the non-Missouri plaintiffs' claims

should be dismissed --- then, defendants say, this Court will have diversity jurisdiction over the remaining claims.

The question of which to consider first --- personal jurisdiction or subject matter jurisdiction --- can have important consequences. This Court has discretion to consider personal jurisdiction before subject matter jurisdiction where it has "a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question." *Id.* at 588.

Defendants urge the Court to consider personal jurisdiction first, relying heavily upon *BMS* and *Jordan v. Bayer Corp*., No. 4:17cv865(CEJ), 2017 WL 3006993 (E.D. Mo. July 14, 2017). In *Jordan*, this Court addressed a case nearly identical to this one in which plaintiffs brought claims against Bayer defendants related to use of the Essure device. The Court, relying upon *Ruhrgas*, addressed defendants' personal jurisdiction arguments first and concluded that *BMS* was dispositive, holding that "there is no personal jurisdiction as to [the non-Missouri-related plaintiffs'[2]] claims because there is no 'connection between the forum and the specific claims at issue.'" *Jordan*, 2017 WL 3006993, at *4 (quoting *BMS*, 137 S.Ct. at 1781). Because the 86 non-Missouri-related plaintiffs alleged no "affiliation between the forum and the underlying controversy," *BMS*, 137 S.Ct. at 1780, those claims were dismissed. The Court denied without prejudice the defendants' motion to dismiss for failure to state a claim or federal preemption and allowed the eight remaining plaintiffs to file an amended complaint.

[2] One Illinois plaintiff alleged she had her device implanted in Missouri. Her claim therefor established personal jurisdiction over defendants. *Id.*

Notably, the Court's decision in *Jordan* occurred shortly after *BMS* was decided.[3] The plaintiffs here have added allegations they say make a *prima facie* case of personal jurisdiction. Plaintiffs concede that Essure was not implanted in Missouri for the non-residents, but they contend Bayer engaged in extensive contacts with Missouri during Essure's development: plaintiffs say Bayer created a marketing strategy, created labeling, and obtained FDA approval of Essure in Missouri. Specifically, Missouri was one of eight principal sites in the United States chosen to conduct pre-market clinical trials. The original manufacturer of Essure used Missouri hospitals and contracted with Missouri physicians to serve as clinical investigators. The results of the ensuing studies were used to support the FDA approval process. Plaintiffs allege that defendants made untrue representations and omitted material information to the FDA, plaintiffs, and plaintiffs' physicians by sponsoring biased medical trials. (Petition ¶ 1044.) St. Louis, Missouri was also the first city in the United States to commercially offer the Essure procedure. Furthermore, plaintiffs believe that Missouri was one of the first cities targeted for an aggressive marketing campaign.

Defendants respond that those additional allegations do not suffice to either make a case for personal jurisdiction or for jurisdictional discovery. Moreover, defendants argue that the personal jurisdiction question remains more straightforward than the question of subject matter jurisdiction. This Court agrees that, despite these new

[3] The *Jordan* plaintiffs filed an amended complaint similar to the complaint here --- adding personal jurisdiction allegations --- shortly before the *Jordan* decision was filed. However, that amended complaint was not properly before the Court because it had been filed without leave of Court. The Court has recently allowed the amendment. *See Jordan v. Bayer Corp.*, 4:17-CV-00865-AGF, 2018 WL 339305, at *2 (E.D. Mo. Jan. 8, 2018).

allegations made by plaintiffs, personal jurisdiction remains the more straightforward inquiry. *See BMS*, 137 S.Ct. at 1781; *Jordan*, 2017 WL 3006993, at *2; *see also State ex rel. Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41(Mo. *banc* 2017). To address subject matter jurisdiction at this juncture would involve deciding whether non-Missouri plaintiffs had been fraudulently joined or misjoined, which is a notoriously complex issue. *See In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 622 (8th Cir. 2010) (noting that doctrine of fraudulent misjoinder is "novel" and declining to rule on whether to accept or reject it); *Filla v. Norfolk S. Ry.*, 336 F.3d 806, 809 (8th Cir. 2003) (noting that doctrine of fraudulent joinder is "difficult[]" to apply). As shown below, the personal jurisdiction inquiry is a much simpler matter.[4] Further, because plaintiffs do not make a *prima facie* showing for personal jurisdiction, *see Lakin v. Prudential Securities, Inc.*, 348 F.3d 704, 709 (8th Cir. 2003), the motion for jurisdictional discovery (#24) will be denied.

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must plead 'sufficient facts to support a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (quoting *K–V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011)). "The evidence must be viewed in a light most favorable to the plaintiff; however, the burden does not shift to the party challenging

[4] Plaintiffs have not yet responded to the defendants' motion to dismiss in light of their motion to stay (#22) and motion to remand (#18). Because the plaintiffs have made their arguments for personal jurisdiction in their other motions' briefing, however, the Court will consider the motion to dismiss now in the interest of judicial economy.

jurisdiction." *Jordan*, 2017 WL 3006993, at *3 (citing *Fastpath, Inc. v. Arbela Techs. Corp*., 760 F.3d 816, 820 (8th Cir. 2014).

Personal jurisdiction may be either general or specific. *Fastpath*, 760 F.3d at 593. Plaintiffs do not argue that general jurisdiction may be applied to defendants, so the Court will address only specific jurisdiction. "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state...." *Bell Paper Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 819 (8th Cir. 1994)) (quoting *Sondergard v. Miles, Inc.*, 985 F.2d 1389, 1392 (8th Cir. 1993)). "Specific personal jurisdiction can be exercised by a federal court in a diversity suit only if authorized by the forum state's long-arm statute and permitted by the Due Process Clause of the Fourteenth Amendment." *Dairy Farmers of America, Inc. v. Bassett & Walker Int'l, Inc*., 702 F.3d 472, 475 (8th Cir. 2012) (quoting *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 593 (8th Cir. 2011)). These are separate questions: "The reach of a state long arm statute is a question of state law, while the extent to which the reach of a long arm statute is limited by due process is a question of federal law." *Jordan*, 2017 WL 3006993, at *3 (internal quotations to *Inst. Food Mktg. Assocs., Ltd. v. Golden State Strawberries, Inc.*, 747 F.2d 448, 455 (8th Cir. 1984) omitted).

"Missouri's long-arm statute authorizes personal jurisdiction over corporate defendants who transact business or commit a tort within the state." *Id.*; § 506.500.1(1), (3) RSMo. "Because the Missouri long-arm statute authorizes the exercise of jurisdiction over non-residents to the extent permissible under the due process clause," this Court

considers "whether the assertion of personal jurisdiction would violate" due process. *Eagle Tech. v. Expander Americas, Inc*., 783 F.3d 1131, 1136 (8th Cir. 2015) (quotations and citations omitted). In determining "whether asserting personal jurisdiction over a party comports with due process," this Court considers five factors: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of action; (4) Missouri's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." *Id.* The Court gives "significant weight to the first three factors." *Aly v. Hanzada for Imp. & Exp. Co., LTD*, 864 F.3d 844, 848 (8th Cir.), *cert. denied sub nom. Hanzada for Imp. & Exp. Co., Ltd. v. Aly*, 138 S. Ct. 203 (2017) (quoting *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 819 (8th Cir. 2014)).

The recent Supreme Court decision *BMS* focuses on the connection between the nonresidents' claims and the forum. *BMS*, 137 S.Ct. at 1782. In *BMS*, out-of-state plaintiffs and California plaintiffs brought claims in California state court based on injuries allegedly caused by defendant BMS's drug Plavix. *Id.* at 1777. The California court held that out-of-state plaintiffs established personal jurisdiction over defendants despite the fact that those plaintiffs suffered no injury in California. However, on writ of certiorari, the United States Supreme Court ordered that the claims of the out-of-state plaintiffs must be dismissed, stating "there must be an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* at 1780 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). The

Supreme Court further cautioned that, under the California court's approach, "the strength of the requisite connection between the forum and the specific claims at issue is relaxed if the defendant has extensive forum contacts that are unrelated to those claims." *Id.* at 1781. The Supreme Court called this "a loose and spurious form of general jurisdiction." *Id.* Instead, the Court held that the defendant's activities in the forum were not adequately linked to the claims brought by non-resident plaintiffs; in other words, because the claims did not arise from the defendant's activities, specific personal jurisdiction was not available. *See id.* In that regard, the Court observed,

> the nonresidents were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. The mere fact that other plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims. As we have explained, "a defendant's relationship with a ... third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S., at ——, 134 S.Ct., at 1123. This remains true even when third parties (here, the plaintiffs who reside in California) can bring claims similar to those brought by the nonresidents. Nor is it sufficient—or even relevant—that BMS conducted research in California on matters unrelated to Plavix. What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.

*Id*.

The Supreme Court also observed, however, in discussing the facts of the case, that "BMS did not develop, create a marketing strategy for, manufacture, label, package, or work on the regulatory approval for Plavix in [California.]" *Id.* at 1778. Plaintiffs seize upon that language and suggest the Supreme Court offered those factors as a blueprint for establishing personal jurisdiction. Plaintiffs thus believe they have solved

their personal jurisdiction problems because they allege that the defendants worked on regulatory approval for Essure in Missouri and also worked on the Essure marketing campaign in Missouri. Plaintiffs argue that they have at least made a *prima facie* case for personal jurisdiction and that they should be able to conduct jurisdictional discovery to prove the plaintiffs' claims' connections to Missouri.

Even assuming that discovery would prove exactly what plaintiffs contend happened in Missouri with respect to Essure marketing and clinical trials, the individual plaintiffs' claims are too attenuated from those activities to prove specific, "case-linked" personal jurisdiction. The links that plaintiffs propose, if allowed, would violate the Due Process Clause. With respect to plaintiffs' arguments that personal jurisdiction may be supported by the alleged Missouri marketing campaign genesis, those arguments are contrary to *BMS.* In fact, the *BMS* plaintiffs themselves alleged that BMS marketed, advertised, and actively sought to promote Plavix in California specifically. *Id.* at 1779, 1783. Plaintiffs here go a step farther, saying defendants used Missouri as "ground zero" for its national campaign --- that is, St. Louis was the first city to commercially offer the Essure procedure and was one of eight "test marketing" campaign sites. (Petition ¶ 165.) Plaintiffs also state that defendants cite to data from the Missouri clinical trials on Essure's labels and in marketing materials distributed to plaintiffs and their physicians. (*Id.*) Plaintiffs add that defendants' success with Essure in St. Louis allowed defendants to achieve profitability and launch a nationwide advertising campaign. (*Id.*) However, the non-Missouri plaintiffs do not allege they viewed Essure advertising in Missouri. That Missouri happened to be Essure's first marketed area has no bearing on the non-

Missouri plaintiffs' claims where those plaintiffs did not see marketing in Missouri, were not prescribed Essure in Missouri, did not purchase Essure in Missouri, and were not injured by Essure in Missouri. Thus the allegations still do not suffice to provide the necessary "connection between the forum and the specific claims at issue." *BMS*, 137 S.Ct. at 1781.

As for plaintiffs' allegations about the clinical trials having occurred in Missouri, plaintiffs argue that such activities play directly into *BMS*'s invitation to prove personal jurisdiction by showing the defendant "work[ed] on the regulatory approval of the product" in Missouri. *Id.* at 1778. But the Missouri clinical trials --- the existence of which defendants readily admit --- are simply too attenuated to serve as a basis for specific personal jurisdiction for defendants. Indeed, the trials would serve more properly as evidence of general personal jurisdiction. The non-Missouri plaintiffs do not allege they participated in a Missouri clinical study or that they reviewed and relied on Missouri clinical studies in deciding to use Essure. Plaintiffs also seem to suggest that specific jurisdiction exists because Essure could not have been approved without clinical trials, and some of those clinical trials occurred in Missouri. But again, this does not serve as an "adequate link" between Missouri and nonresidents' claims that their individual device injured them in another state. *See id.* at 1781.

In contrast, courts have found specific personal jurisdiction, for example, where a non-Missouri defendant sold a car over the internet to a Missouri resident. *Andra v. Left Gate Prop. Holding, Inc.*, 453 S.W.3d 216, 226–27 (Mo. *banc* 2015). In another case, where an insurance company brought a declaratory judgment claim against an Arizona

defendant in Missouri seeking a declaration that the insurance company had no liability regarding a workers' compensation claim, this Court found specific personal jurisdiction over defendant because the defendant had initiated the workers' compensation claim in Missouri. *New Hampshire Ins. Co. v. Pennington*, 1:17CV00142 ACL, 2018 WL 465787, at *4 (E.D. Mo. Jan. 18, 2018). On the other hand, however, no specific personal jurisdiction was found in Missouri over a railroad company for an accident that occurred in Indiana despite the fact that the railroad had many miles of train track (and numerous employees) in Missouri --- the Missouri activities were not sufficiently related to the claim, which occurred entirely in Indiana. *Dolan*, 512 S.W.3d at 49.

The Court concludes that it does not have jurisdiction over defendants for the non-Missouri plaintiffs' claims. As a result, the non-Missouri plaintiffs' claims will be dismissed. Because the Court has diversity jurisdiction over the Missouri plaintiffs' claims, the Court will deny the plaintiffs' motion to remand (#18).

**B. Federal Preemption**

Defendants also argue in their motion to dismiss that the entire complaint should be dismissed because the claims are preempted by federal law. The parties' briefing on this matter within the motion to remand devolved into an argument about jurisdiction, and thus the matter has not been fully addressed. The parties shall complete briefing on this matter before the Court fully adjudicates the motion to dismiss.

**C. Failure to Plead a Plausible Claim for Relief**

As with defendants' federal preemption argument, defendants' argument that plaintiffs failed to plead a plausible claim for relief has also not been fully addressed by the parties. The parties shall complete briefing on this matter before the Court fully adjudicates the motion to dismiss.

Accordingly,

IT IS HEREBY ORDERED that defendants' motion to dismiss (#11) is GRANTED in part with respect to personal jurisdiction and is HELD IN ABEYANCE with respect to federal preemption and failure to plead a plausible claim.

IT IS HEREBY ORDERED that claims of all non-Missouri plaintiffs are DISMISSED for lack of personal jurisdiction.

IT IS FURTHER ORDERED that the remaining Missouri resident plaintiffs shall have until February 20, 2018 to file a response brief addressing Sections III and IV of defendants' memorandum in support of their motion to dismiss. Defendants shall have until February 27, 2018 by which to file a reply brief.

IT IS FURTHER ORDERED that the defendants' motion to sever (#14) is DENIED as moot.

IT IS FURTHER ORDERED plaintiffs' motion for remand (#18) is DENIED.

IT IS FURTHER ORDERED that plaintiffs' motion to stay (#22) is DENIED as moot.

IT IS FINALLY ORDERED that plaintiffs' motion for leave to conduct jurisdictional discovery (#24) is DENIED.

Dated this 24th day of January, 2018.

STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE